FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2025-2661

_____

RODNEY POUGH,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Gadsden County.
Christopher D. Bufano, Judge.

May 13, 2026

NEFF, J.

Rodney Pough appeals a final order authorizing the Florida Department of Children and Families ("DCF") to involuntarily administer psychotropic medication to him as a forensic client committed to Florida State Hospital pursuant to Chapter 916, Florida Statutes. Upon review of the order and the transcript of the hearing, we affirm.

**<u>Facts</u>**

Pough was found incompetent to proceed to trial on a felony charge in Escambia County and committed to the DCF. He has been a patient at Florida State Hospital since May 23, 2025. The administrator of Florida State Hospital petitioned the circuit court

pursuant to section 916.107(3), Fla. Stat. (2025), for an order authorizing involuntary treatment, including the administration of psychotropic medications, on the basis that Pough was clinically incompetent to provide express and informed consent to treatment.

At the September 24, 2025 evidentiary hearing, Scarlett Varn, a nurse practitioner with fifteen years of experience at Florida State Hospital and Pough's attending provider, testified on behalf of the State. Ms. Varn testified that Pough's working diagnosis is unspecified schizophrenia, with rule-outs of schizoaffective disorder (bipolar type), bipolar disorder with psychotic features, and personality disorder, and that without consistent medication she cannot rule out these differential diagnoses. She described his symptoms as including poor sleep, paranoid and persecutory ideation, auditory and visual hallucinations—including persistent command hallucinations of both a homicidal and suicidal nature— and grandiosity with religious and sexual themes and preoccupations.

Ms. Varn further testified that Pough has engaged in a pattern of unwanted and inappropriate sexual advances toward female staff, including a July 18, 2025 incident in which he pinned a staff member in a stairwell and attempted to kiss her and propose sexual engagement. He also struck another patient for touching his drawings, resulting in an emergency treatment order. During that emergency treatment period (August 28 through September 2, 2025), Pough received olanzapine and his inappropriate sexual behaviors notably decreased. Pough is not currently taking any medication. Ms. Varn testified that his prognosis without treatment is poor and with treatment is good. Defense counsel did not cross-examine Ms. Varn.

Pough testified that he opposes forced medication, believes it harms him, and prefers medical marijuana. He denied the sexual assault allegations and conceded striking the other patient, though he attributed that act to the other patient having assaulted him.

Following a brief argument from defense counsel, the trial court granted the petition on the record. The judge followed up his oral pronouncement with a written order titled "Order Approving

2

Treatment." This written order is a pre-printed form order that follows the statutorily required language from section 916.107(3). The judge checked the applicable boxes and signed the order. Pough timely appealed.

## Analysis

"A trial court's order requiring a forensic client committed to a state mental health facility to accept involuntary psychotropic treatment must be supported by competent, substantial evidence." *Miller v. N. Florida Evaluation & Treatment Ctr.*, 287 So. 3d 681, 684 (Fla. 1st DCA 2019) (citing *Dinardo v. State*, 742 So. 2d 287, 289 (Fla. 1st DCA 1998)).

## I. Statutory Requirements

Section 916.107(3)(a)3., Fla. Stat., requires the trial court to determine by clear and convincing evidence that: (1) the client has a mental illness; (2) the treatment not consented to is essential to the care of the client; and (3) the treatment is not experimental and does not present an unreasonable risk of serious, hazardous, or irreversible side effects. The court must also consider the client's treatment preference, the likelihood of adverse side effects, and the client's prognosis with and without treatment. § 916.107(3)(a)3.a.–d., Fla. Stat.

The trial court's form order expressly reflects consideration of each of these statutory factors. Further, the hearing transcript contains competent, substantial evidence for each of these findings. Ms. Varn's uncontroverted testimony established that Pough suffers from a serious mental illness; that the requested medications are essential to his care and to the safety of others; that the medications are not experimental and do not present an unreasonable risk of serious, hazardous, or irreversible side effects, and that any side effects that do develop can be controlled; that Pough's preference is against medication (which the court considered); and that his prognosis without treatment is poor and with treatment is good. Thus, the statutory requirements are satisfied and supported by competent, substantial evidence.

## II. Constitutional Requirements

3

Pough argues that the trial court's order is constitutionally infirm because the court made no explicit finding that he was a danger to himself or others and therefore was required to—but did not—conduct the four-factor analysis prescribed by *Sell v. United States*, 539 U.S. 166, 180–82 (2003). We disagree.

A forensic client in state custody retains a significant liberty interest under the Due Process Clause of the Fourteenth Amendment in avoiding the unwanted administration of antipsychotic drugs. *Washington v. Harper*, 494 U.S. 210, 221 (1990). The *Sell* framework governs only the narrow circumstance in which the government seeks to involuntarily medicate a forensic client solely for the purpose of restoring competency to stand trial. *Sell*, 539 U.S. at 180-82; *see also Howell v. State*, 133 So. 3d 511, 523 (Fla. 2014) (observing that *Sell* applies in Florida in cases involving the involuntary medication of forensic clients to restore competency to stand trial). Where the court's authorization of involuntary treatment rests on independent grounds, such as the defendant's dangerousness <u>or</u> his clinical incompetence to make his own medical decisions, the *Sell* analysis is not required. *Sell*, 539 U.S. at 181–82; *Miller*, 287 So. 3d at 685.

In *Miller*, this Court affirmed an involuntary medication order even after concluding that the trial court had erroneously relied on the original commitment order to establish dangerousness. We held that the order was independently supported because the defendant was not competent to make his own medical decisions and medication was essential to his care, and that those findings were sufficient to authorize involuntary treatment without application of the *Sell* factors. *Id.*

The same is true here. The form order expressly found Pough "clinically incompetent and/or has refused to give express and informed written consent to treatment." Ms. Varn testified that Pough minimizes the severity of his mental illness, refuses all conventional treatments under any circumstances, and lacks meaningful insight into his condition or the gravity of his circumstances. While Ms. Varn did not use the precise language employed in *Miller*, her testimony establishes the functional equivalent of clinical incompetence to make treatment decisions.

4

This is the clinical incompetence ground this Court found sufficient in *Miller* to bypass the *Sell* analysis.

Pough also contends the trial court gave insufficient weight to his treatment preference. The statute requires the court to consider the client's preference, not to defer to it. § 916.107(3)(a)3.a., Fla. Stat. Pough's stated preferred alternative, medical marijuana, is not clinically indicated for a patient with psychosis and is unavailable in the institutional setting. The court was not required to credit that preference over the uncontroverted clinical judgment of his treating provider.

Finally, we note that the record contains sufficient evidence of dangerousness that independently supports the order, even in the absence of an explicit written finding. Indeed, on this record, a dangerousness finding would have been well-supported: Ms. Varn testified—and Pough's own concession confirms—that he struck another patient. Ms. Varn further testified that Pough pinned a female staff member in a stairwell and attempted to kiss her and propose sexual engagement, and that female staff alter their daily movements out of fear of him. While the United States Supreme Court has recognized "a significant liberty interest in avoiding the unwanted administration of psychotropic drugs," *Washington*, 494 U.S. at 221, a forensic client's liberty interest in refusing medication may be overridden where the safety of others is placed at risk. *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982) ("The State also has the unquestioned duty to provide reasonable safety for all residents and personnel within the institution."). The administrator of Florida State Hospital has a duty to his employees and to the other forensic clients to provide a reasonably safe environment. The law, as well as common sense, dictates that a mentally incompetent person like Pough may not refuse medication where the evidence demonstrates the requested treatment will reduce the likelihood he will sexually assault nursing staff or engage in violence against others. As stated in *Cruzan by Cruzan v. Dir., Missouri Dept. of Health*, 497 U.S. 261, 280 (1990), "[a]n incompetent person is not able to make an informed and voluntary choice to exercise a hypothetical right to refuse treatment or any other right. Such a 'right' must be exercised for [him], if at all, by some sort of surrogate." Here, that

5

choice was properly made by the trial court, based on the evidence before it, and in accordance with the statutory framework.

## Conclusion

Competent, substantial evidence supports the trial court's findings under section 916.107(3)(a), Fla. Stat. The *Sell* framework is not implicated because the involuntary medication order does not rest solely on restoration of competency to proceed to trial. The uncontroverted record establishes that Pough minimizes the severity of his mental illness, refuses all conventional treatment under any circumstances, and lacks meaningful insight into his condition—the clinical incompetence ground this Court found sufficient in *Miller* to authorize involuntary treatment without a *Sell* analysis. We affirm.

**AFFIRMED.**

KELSEY and NORDBY, JJ., concur.

———————————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————————

Jessica J. Yeary, Public Defender, and Laurel Fletcher Mobley, Megan Lynne Long, and Lori A. Willner, Assistant Public Defenders, Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Brandon M. Elyakim, Assistant Attorney General, Tallahassee, and Kathi Lee Kilpatrick, Department of Children and Families, Chattahoochee, for Appellee.